# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

STEVEN MILLER                                                    PLAINTIFF


v.                              NO. 4:15-cv-00311 BRW/PSH


AUSTIN CALLAHAN, LARRY BARBEE,                                  DEFENDANTS
CHARLES "DOC" HOLLADAY, and
RANDY MORGAN


## FINDINGS AND RECOMMENDATION


## INSTRUCTIONS


The following proposed Findings and Recommendation have been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

INTRODUCTION. The defendants have filed the pending motion for summary judgment. See Document 56.[1] For the reasons that follow, the undersigned recommends that the motion be granted, judgment be entered for all of the defendants, and this case be dismissed with prejudice.

PLEADINGS. Plaintiff Steven Miller ("Miller") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 1983 and joining Austin Callahan ("Callahan"), Larry Barbee ("Barbee"), Charles "Doc" Holladay, and Randy Morgan of the Pulaski County Sheriff's Office ("Sheriff's Office"). In the complaint and a later filed amended complaint, Miller alleged that he was being transported in a Sheriff's Office van when it was struck from behind by another vehicle on Interstate 530. He was injured in the accident and attributed his injuries to a lack of seatbelts in the van. He maintained that the defendants were deliberately indifferent to his health and safety when they allowed him to be transported in a van without seatbelts.

The defendants responded to the complaints by filing a motion for summary judgment. In the motion and an accompanying brief, they acknowledged that Sheriff's Office vans are not equipped with seatbelts for inmates. The defendants nevertheless maintained that they are entitled to judgment as a matter of law because they "did not

---

[1]

The defendants appear to have filed their motion pursuant to Federal Rule of Civil Procedure 56. The rule provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

know of and disregard an excessive risk to Miller's health and safety." See Document 56 at CM/ECF 1. With specific regard to Miller's official capacity claims, they maintained that he failed to show an underlying constitutional violation. With specific regard to his individual capacity claims, they maintained that they enjoy qualified immunity.

Miller filed a response to the motion for summary judgment in which he offered several reasons why the defendants are not entitled to judgment as a matter of law. As a part of his response, he submitted a document that contains the following provision: "Agents secure inmate in transport van and properly place seat belt on inmate." See Document 60 at CM/ECF 7.[2]

FACTS. The defendants filed a statement of material facts as required by Local Rule 56.1(a). Miller filed a response to the defendants' statement, but the response did not conform to the requirements of Local Rule 56.1(b). The undersigned has nevertheless considered Miller's response, as well as the other pleadings and exhibits in the record. Those submissions establish that the material facts are not in dispute. The facts are as follows:

1. On April 15, 2015, Miller was booked into the Pulaski County Regional Detention Facility as a "convicted penitentiary returnee" from the Arkansas Department of Correction ("ADC"). See Document 57 at CM/ECF 1.

---

[2]

The defendants thereafter filed a reply, see Document 61, and Miller filed two separate pleadings in opposition to the defendants' motion for summary judgment, see Documents 65, 66. The undersigned has considered those submissions in reviewing the defendants' motion for summary judgment.

2. On July 16, 2015, Miller and six other inmates entered a Sheriff's Office van for transport to the "respective ADC units to which they were designated." See Document 57 at CM/ECF 1.

3. The van could carry up to thirteen inmates and was staffed, in accordance with the Sheriff's Office policy and practice, by two officers, in this instance Callahan and Barbee. See Document 57 at CM/ECF 1, 4.

4. Callahan and Barbee sat in the front seats and were separated from the inmates by steel fencing. See Document 57 at CM/ECF 4.

5. Four rows of benches were behind the steel fencing; the first three rows of benches could seat three inmates, and the back bench could seat four inmates. See Document 57 at CM/ECF 4.

6. The Sheriff's Office procedure for transporting inmates requires "the inmates to be handcuffed with their cuffs secured to a 'belly chain' around their waist. The locks of the handcuffs are covered by a 'black box,' which protects the key holes of the cuffs so inmates cannot pick or tamper with locks." See Document 57 at CM/ECF 3.

7. The vans used by the Sheriff's Office for transport are not equipped with seatbelts for inmates. The reason the vans are not so equipped is premised upon a concern that inmates could use the seatbelts as "a weapon to harm an officer, other inmates being transported in the van, or themselves." See Document 57 at CM/ECF 3.

8. There are other reasons why the vans are not equipped with seatbelts for inmates; those reasons are as follows:

-4-

Because inmates are restrained during transport, they would not be able to fasten the seatbelts themselves. If seatbelts were used, a deputy would have to reach over and around an inmate while in an awkward and vulnerable position as a result of maneuvering in [a] tight space. Each transport deputy is armed with a pistol, and being in a vulnerable position in close quarters with inmates would put the deputy at increased risk of being disarmed as he attempts to fasten the inmate's seatbelt. …

Because of space restrictions, the deputies would also have to load the inmates in the van one at a time so the deputy would have sufficient room to secure each seatbelt. This would leave the other deputy to watch all of the other inmates alone while the deputy in the van fastened the seatbelt. …

See Document 57 at CM/ECF 3-4.

9. Given the forgoing concerns, it is the Sheriff's Office practice to have inmates enter the vans without assistance, then be seated while the two transport officers guard the inmates waiting to board. See Document 57 at CM/ECF 4.

10. The Sheriff's Office goal is to transport inmates without harm to the officers or inmates, and it is the Sheriff's Office policy that all departmental vehicles be operated in a safe, courteous, and lawful manner. See Document 57 at CM/ECF 4.

11. Callahan was driving the van along Interstate 530 when traffic in front of the van came to a complete stop; he stopped the van, after which the following occurred:

… an SUV approaching the van from the rear failed to see that traffic had stopped and was forced to veer onto the shoulder of the interstate in order to avoid colliding with the van. …

A full sized Ford F-250 towing a 20 foot trailer was traveling directly behind the SUV and was unable to avoid the van. The truck impacted the rear of the van. …

-5-

> The truck's impact caused the van to collide with the truck stopped on the interstate in front of the van. …

See Document 57 at CM/ECF 2.

12. Miller received medical attention after the accident, but it was determined that his injuries required no medical care. See Document 57 at CM/ECF 2.

ANALYSIS. A prisoner's challenge to the conditions of his confinement is analyzed under the Eighth Amendment. See Johnson v. Boyd, 676 F.Supp. 2d 800 (E.D.Ark. 2009) (Wright, J.). He must show that the conditions constituted a substantial risk of serious harm to his health or safety and that state officials were deliberately indifferent to the risk of harm posed by the conditions. See Id. If, however, the person is a pre-trial detainee, his challenge to the conditions of his confinement is analyzed under the Fourteenth Amendment. See Morris v. Zefferi, 601 F.3d 805 (8th Cir. 2010). He must show that the conditions constitute punishment. See Id. With respect to that standard, the Court of Appeals has observed the following:

> … "[P]retrial detainees are entitled to 'at least as great' protection [under the Fourteenth Amendment] as that afforded convicted prisoners under the Eighth Amendment. … "Although this court has yet to establish a clear standard for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." … "We have previously suggested that the burden of showing a constitutional violation is lighter for a pretrial detainee under the Fourteenth Amendment than for a post-conviction prisoner under the Eighth Amendment." …

See Id. at 809 [internal citations omitted].

Miller's claim that he was transported in a van without seatbelts is a challenge to his conditions of confinement. See Id. (claim of being transported in dog cage was challenge to conditions of confinement). Was he a prisoner at the time of the accident or a pre-trial detainee? The defendants represent that he was a "convicted penitentiary returnee," but the precise meaning of that phrase is not clear. Miller admits that he was "in jail for [a] parole violation [and was] facing pending charges." See Document 1 at CM/ECF 3. Although correctly identifying his status as a prisoner or pre-trial detainee is not critical as the same analysis is involved, the undersigned finds that he was a prisoner. He must therefore show that being transported in a van without seatbelts constituted a substantial risk of serious harm to his health or safety, and state officials were deliberately indifferent to the risk of harm posed by the conditions.

In Spencer v. Knapheide Truck Equiment Company, 183 F.3d 902 (8th Cir. 1999), a police officer was called upon to transport Spencer, who was handcuffed and intoxicated. The officer escorted Spencer to the rear of a patrol wagon and into the prisoner compartment, after which the following occurred:

> … Once inside the compartment, Spencer sat on one of two steel benches which run lengthwise along each side of the compartment's interior. [Footnote omitted]. There were no seatbelts or other safety restraint devices installed in the compartment. Spencer claims that during the trip to the police station, he had difficulty maintaining his balance on the bench and that he was tossed around as [the officer] made turns, stops, and starts. At some point during the ride, Spencer claims he was thrown forward into the bulkhead of the compartment causing severe injuries and rendering him a quadriplegic.

See Id. at 904. Spencer thereafter filed a complaint pursuant to 42 U.S.C. 1983 seeking

damages for his injuries. He joined a board of police commissioners and maintained, in

part, that board violated his constitutional rights by adhering to a policy of purchasing

and using patrol wagons that were inherently unsafe because they lacked seatbelts, and

the policy constituted a form of punishment for pre-trial detainees such as himself. The

district court granted summary judgment, and the Court of Appeal affirmed. In doing so,

the Court of Appeals observed the following:

> … As the district court correctly noted, deliberate indifference is a
> difficult standard to meet. … Regardless of whether the term is framed as
> a subjective or objective test, the alleged deprivation must still be
> "sufficiently serious" and "pose a substantial risk of serious harm." …
>
> Thus, even using an objective standard, we do not think the Board's
> purchase of patrol wagons without safety restraints nor its manner of
> transporting individuals in these wagons were policies that obviously
> presented a "substantial risk of serious harm." This is particularly true in
> light of the fact that, at the time of Spencer's arrest, the Kansas City,
> Missouri, Police Department had guidelines in place which instructed its
> officers to exercise caution when transporting individuals in patrol wagons.
> [Footnoted omitted]. Though these guidelines may not have been adequate
> to prevent injuries, their failure, if any, constitute negligence at most.
>
> Spencer claims that the Board's deliberate indifference is also
> illustrated by the fact that prior to his arrest, the Board had notice, in the
> form of citizen complaints filed with the Board's Office of Citizen
> Complaints, that injuries were occurring to individuals during transport in
> the patrol wagons. The record shows that, with the exception of one
> detainee who was taken to the hospital, the complaints refer to minor
> injuries or allegations of being tossed about the compartment without any
> resulting injuries. In short, we find that the complaints do not establish
> that the Board was deliberately indifferent to conditions that posed a
> substantial risk of serious harm.

Finally, we reject Spencer's claim that the Board's policies constituted a form of punishment for pretrial detainees. When a policy lacks an express intent to punish, as this one does, we may infer such an intent if the policy is either unrelated to a legitimate penological goal or excessive in relation to that goal. ... The Board's decision to use patrol wagons without seatbelts was based on its concern that individuals transported in the wagon, even those who were handcuffed, could use the seatbelt as a weapon to harm an officer, other passengers being transported in the wagon, or even themselves. Such a policy is related to the legitimate penological goal of transporting individuals to police facilities without harm to officers or passengers. Nor can we infer an intent to punish from the Board's decision not to install any other forms of safety devices or padding in the wagon, especially in light of the Board's guidelines cautioning officers to exercise care in the transport of such individuals and the paucity of complaints of serious harm occurring during such transport.

See Id. at 906-907.

The facts of Spencer v. Knapheide Truck Equiment Company are substantially similar to the facts of this case, and the undersigned will follow the holding and rationale in that case. Doing so, the undersigned finds that the Sheriff's Office use of a van without seatbelts for inmates did not constitute a substantial risk of serious harm to Miller's health or safety. Had the Sheriff's Office been on notice that injuries were occurring to inmates during transport because of a lack of seatbelts, the undersigned might find otherwise, but Miller has offered no evidence that the Sheriff's Office was on such notice. Miller's representation that he told Callahan and Barbee about safety issues in the van is not adequate notice. The defendants have presented several reasons for using a van without seatbelts, and the reasons are reasonably related to a legitimate penological goal of transporting inmates without harm to the inmates or officers.

-9-

Miller challenges the reasons underlying the Sheriff's Office policy and practice of using vans without seatbelts for inmates. <u>See</u> Documents 60, 65, 66. For instance, he alleges that there is no security threat posed by seatbelts because the officers have firearms and the inmates are shackled. He also alleges that the officers have enough rounds in the chambers of their firearms to suppress any breach in security. The defendants' response to Miller's challenges is persuasive and is adopted by the undersigned. The response is as follows:

> … The [Sheriff's Office] could reasonably believe that requiring an officer to be confined in close quarters with several inmates while buckling their seatbelts poses a clear risk to that officer. The officer would be distracted and in a compromised position, putting him at increased risk of attack from the inmates, while the other officer would be charged with supervising all other inmates alone. Miller's assertion that each officer had enough bullets for all of the inmates is not a reasonable solution. The Sheriff's [Office] policy is designed to prevent danger without necessitating the use of force. Miller also ignores the fact that [Sheriff's Office] policy is in place in order to protect the inmates and officers from violence from other inmates. …

<u>See</u> Document 61 at CM/ECF 2.

Miller alternatively maintains that the reasons underlying the Sheriff's Office policy and practice are specious because an inmate who is restrained and unable to fasten a seatbelt is incapable of harming another inmate or an officer. The undersigned cannot embrace Miller's position. The undersigned credits the defendants' assertion that if seatbelts were used, an officer would have to put himself in an awkward and vulnerable position and would put him at increased risk of being disarmed.

Miller has offered a document that contains the following provision: "Agents secure inmate in transport van and properly place seat belt on inmate." The document is given no weight. The undersigned credits the defendants' assertions that Miller never identified the document, it is not a Sheriff's Office document, and it does not set forth the Sheriff's Office policy or practice.

Miller alleges that the van used to transport him previously had seatbelts for inmates, but the seatbelts had been removed. Assuming, arguendo, that the seatbelts had been removed, the fact is of no consequence. The defendants have offered several reasons for the absence of seatbelts for inmates, and the reasons are reasonably related to the legitimate penological goal of transporting inmates without harm to the inmates or officers.

Miller correctly notes that the State of Arkansas has a "click it or ticket" law mandating the use of seatbelts. Miller alleges that Callahan and Barbee should have known that the inmates being transported were at risk of injury when not buckled with seatbelts. There are two problems with Miller's assertion. First, any violation of the "click it or ticket" law is a violation of state law, and a violation of state law, without more, does not state a claim under 42 U.S.C. 1983. See Bagley v. "Rogerson, 5 F.3d 325 (8th Cir. 1993). Second, to the extent a violation of the "click it or ticket" law states a claim under 42 U.S.C. 1983, there was no violation of the law in this instance. The "click it or ticket" law codified at Ark. Code Ann. 27-37-702 mandates the use of seatbelts only in the front seats, not the backseat where Miller was seated at the time of the accident.

Miller maintains that the van used to transport him was inherently dangerous because it had steel bars inside the rear/inmate compartment. Like the Court of Appeals in <u>Spencer v. Knapheide Truck Equiment Company</u>, the undersigned will not infer an intent to harm or punish from the lack of safety devices or padding in the van, especially in light of the Sheriff's Office guideline cautioning officers to exercise care in the transport of inmates and the paucity of complaints of serious harm occurring during such transport.

<u>RECOMMENDATION</u>. There is no genuine dispute as to any material fact, and the defendants are entitled to judgment as a matter of law.[3] Their motion for summary judgment should therefore be granted. Miller's complaint should be dismissed with prejudice, and judgment should be entered for all of the defendants.

DATED this 24th day of October, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3]

The undersigned has not addressed the defendants' assertions that they are entitled to judgment as a matter of law in their official and individual capacities. To the extent the undersigned should address the assertions, they warrant relief. For the reasons set forth in the Findings and Recommendation, Miller has failed to show an underlying constitutional violation. The defendants have offered legitimate penological reasons for transporting inmates in vans without seatbelts. The defendants are also entitled to qualified immunity because Miller has failed to show that a reasonable officer should have known transporting inmates in a van without seatbelts violates a clearly established constitutional right. See <u>Prosser v. Ross</u>, 70 F.3d 1005 (8th Cir. 1995).